# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **LARRY KERMIT TAYLOR,**<br>   Plaintiff | )<br>)<br>) |
| v. | )   Civil Action No. 1:16cv00044<br>) |
| **ANDREW SAUL,**[1]<br>**Commissioner of**<br> **Social Security,**<br>   Defendant | )   **MEMORANDUM OPINION**<br>)<br>)<br>)   BY: PAMELA MEADE SARGENT<br>)   United States Magistrate Judge |

By Memorandum Opinion, Order and Judgment entered February 21, 2018, the court upheld the final decision of the Commissioner of Social Security, ("Commissioner"), determining that Plaintiff, Larry Kermit Taylor, ("Taylor"), was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011 & 2018 Supp.), following a redetermination hearing, held pursuant to 42 U.S.C. § 405(u). On March 21, 2018, Taylor filed a Motion To Alter Or Amend A Judgment, (Docket Item No. 26) ("Motion"), asking the court to vacate the judgment and reopen this case to correct errors in its judgment and to allow the filing of an amended complaint to raise additional challenges to the Commissioner's decision denying benefits. The Motion was heard before the undersigned on October 15, 2018. Based on the arguments and representations of counsel, and for the reasoning set out below, the court will deny the Motion.

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019; therefore, he is substituted for Nancy A. Berryhill as the defendant in this case by separate Order entered this date.

On his initial application for DIB, Taylor was represented by the now infamous Eric C. Conn. Conn, a southeastern Kentucky lawyer who held himself out as "Mr. Social Security," and who pleaded guilty in June 2018 in United States District Court for the Eastern District of Kentucky to a charge of conspiracy to defraud the Social Security Administration. In particular, Conn admitted to obtaining and using fraudulent medical evidence in his clients' claims and to paying more than $600,000.00 in bribes to Administrative Law Judge David B. Daugherty to issue approval of disability benefits applications for his clients. Conn originally pleaded guilty pursuant to a plea agreement in 2017. Before he could be sentenced on that plea, however, Conn fled the country. He was later captured in Honduras in December 2017 and returned to Kentucky, where he pleaded guilty to additional charges.

On May 12, 2015, the Social Security Administration's, ("SSA" or "Agency"), Office of the Inspector General, ("OIG"), informed SSA that it had reason to believe fraud was involved in applications for benefits for approximately 1,800 of Conn's former clients, including Taylor, whose cases involved evidence from Bradley Adkins, Ph.D., Dr. Srini Ammisetty, M.D., Dr. Frederic Huffnagle, M.D., or Dr. David P. Herr, D.O., dated between January 2007 and May 2011. (R. at 337.) More specifically, OIG had reason to believe that Conn, or his law firm, submitted precompleted "template" residual functional capacity forms, some of which were from Dr. Ammisetty, between January 2007 and May 2011, in support of these individuals' applications for benefits. On May 18, 2015, the Appeals Council informed Taylor it was redetermining the decision granting him DIB benefits on or before February 2, 2011. (R. at 153-56.) As part of Taylor's original application, Taylor underwent a consultative examination by Dr. Srini Ammisetty, M.D., arranged by Conn. (R. at 525-27.) Taylor was awarded DIB benefits by decision dated February 2, 2011, by ALJ Daugherty and entered without a hearing.

(R. at 9, 106-09.) ALJ Daugherty's favorable decision was based, in part, on the examination and report of Dr. Ammisetty.

In August 2015, the Appeals Council set aside the prior favorable decision and remanded Taylor's case to a different ALJ for further action and a new decision. (R. at 111-14.) As a result of a redetermination hearing, another ALJ, ALJ Gavras, by decision dated April 21, 2016, found there was insufficient evidence to support Taylor's entitlement to DIB benefits at the time he was originally awarded them. (R. at 9-16.) That being the case, the ALJ terminated Taylor's benefits. Taylor requested review of the ALJ's decision, (R. at 5), which the Appeals Council denied on September 7, 2016. (R. at 1-3.) Taylor then filed the present action on November 3, 2016, to appeal the Commissioner's unfavorable redetermination decision. By Memorandum Opinion, Order and Judgment entered February 21, 2018, the court upheld the final decision of the Commissioner. On March 21, 2018, Taylor filed the Motion currently before the court.

In support of the Motion, Taylor argues that the court should reopen this case and alter or amend its previous judgment because: (1) the court's February 21, 2018, Opinion and Judgment committed clear errors of law; and (2) there have been significant factual and legal developments since the briefing of the case. Federal Rules of Civil Procedure Rule 59(e) allows a motion to alter or amend judgment to be filed within 28 days after entry of the judgment. Taylor's Motion was filed within 28 days of entry of the court's judgment.

The Fourth Circuit has held that Rule 59(e) motions should be successful in only three situations: "(1) to accommodate an intervening change in controlling

law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotation marks omitted). Furthermore, whether to grant or deny a motion to alter or amend judgment under Rule 59(e) is within the sound discretion of the court. *See Zinkand*, 478 F.3d at 637 (citing *Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006)). Furthermore, Rule 59(e) motions may not be used to raise arguments which could have been raised prior to entry of the court's judgment. *See Pac. Ins. Co. v. Am. Nat'l. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). I will first consider Taylor's argument that the court's February 21, 2018, Opinion and Judgment committed clear errors of law.

Rule 59(e) allows a district court to correct its own errors. *See Pac. Ins. Co.*, 148 F.3d at 403. Rule 59(e) should not be used, however, to allow a party to complete presenting his case or to relitigate matters after the court has ruled against him. *See Pac. Ins. Co.*, 148 F.3d at 403. Taylor argues that the court committed clear error by misconstruing his due process argument as attacking only the OIG's decision that fraud was involved in Taylor's application for benefits and not the OIG's decision that fraud was involved in the procurement of Dr. Ammisetty's reports. Based on a review of the court's previous decision, I find no error. The court properly construed Taylor's due process argument as attacking both the OIG's decision that fraud was involved in Taylor's application for benefits, as well as the OIG's decision that Dr. Ammisetty's reports should be excluded on redetermination. Taylor may not be satisfied with the court's decision on this issue, but the court fully addressed his argument on this issue in its previous opinion and will not relitigate this issue.

Likewise, I find no error in the court's interpretation of the statute at issue or in the court's deference to the Commissioner's interpretation of the statute. Taylor

argues that the court incorrectly deferred to the Commissioner's interpretation of the statute under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). In particular, Taylor argues that the case cited by the court as recognizing that Social Security Rulings are entitled to *Chevron* deference, *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552 (6th Cir. 1995), is no longer good law based on the Supreme Court's ruling in *United States v. Mead Corp.*, 533 U.S. 218 (2001). Based on my review of the relevant cases, I find that Taylor's argument that *Garcia* is no longer good law is simply incorrect.

In *Garcia*, 46 F.3d at 557, the Sixth Circuit held that, while Social Security Rulings do not have the force or effect of law, they are entitled to *Chevron* deference, insofar as they directly involve construction of the statute at issue. The Sixth Circuit's opinion in *Garcia* noted that both the Second and the Fourth Circuits had similarly held. *See* 46 F.3d at 557 (citing *White v. Shalala*, 7 F.3d 296, 300 (2nd Cir. 1993); *Kennedy v. Shalala*, 995 F.2d 28, 30 & n.3 (4th Cir. 1993)); *see also Fair v. Shalala,* 37 F.3d 1466 (11th Cir. 1994)*; Inman v. Shalala,* 30 F.3d 840 (7th Cir. 1994); *Ryder v. Shalala*, 25 F.3d 944 (10th Cir 1994). While *Mead Corp.* does address whether *Chevron* deference should be granted to an agency decision under the facts of that particular case, the Supreme Court's opinion does not overturn the Circuit Court opinions cited above. In fact, I can find no case that has overturned any of these Circuit Court opinions. Additionally, courts in this Circuit have continued to cite *Kennedy* as good law even after the Supreme Court's ruling in *Mead Corp. See Robertson v. Berryhill,* 2017 WL 1170873 (S.D. W.Va. Mar. 28, 2017); *Buscarino v. TQ Logistics, Inc.,* 2010 WL 3211708 (D. S.C. Aug. 11, 2010).

I also find no error in the court's finding that substantial evidence supported the Commissioner's decision that Taylor was not disabled prior to February 2,

2011. The court's decision on this issue was fully explained in its February 21, 2018, Memorandum Opinion, and this issue will not be relitigated on the Motion.

I will next address Taylor's argument that the Motion should be granted because there have been significant legal developments subsequent to the parties' briefing of the issues in the case. In particular, Taylor argues that the court grant the Motion, set aside its previous decision and allow him to amend his Complaint to add claims attacking the constitutional authority of the SSA's decisionmakers on Taylor's redetermination and the SSA's reliance on guidance documents. None of these arguments were raised with the court before its February 21, 2018, decision, and Taylor offers no explanation to the court as to why these arguments were not raised earlier. I will consider these arguments in reverse order.

Taylor argues that two Department of Justice, ("DOJ"), memoranda, one issued on November 16, 2017, and the other issued January 25, 2018, ("Memoranda"), recently changed DOJ policy and prohibit the SSA's reliance on guidance documents. The Commissioner argues that these Memoranda do not reflect any change in DOJ policy and, regardless, do not prohibit the Commissioner's reliance on guidance documents that contain interpretative rules. The parties agree that the Memoranda state that guidance documents may not be used as a substitute for formal rulemaking. The Commissioner, however, argues it is the Administrative Procedures Act, ("APA"), which requires an agency to use notice-and-comment rulemaking when purporting to create rights or obligations binding on members of the public or the agency. Thus, the Commissioner argues, Taylor could have brought this challenge under the APA at any time.

Also, as the Supreme Court has noted, the APA recognizes that its notice-and-comment requirement "does not apply" to "interpretative rules." 5 U.S.C. §

553(b)(A) *cited in Perez v. Mortg. Bankers Ass'n*, 135 S.Ct. 1199, 1203-04 (2015). The Supreme Court, further, has held that a "critical feature of interpretative rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez*, 135 S.Ct. at 1204 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). Here, the guidance documents at issue, Social Security Ruling, ("S.S.R."), 16-1p 81 and the Hearings, Appeals, and Litigation Law Manual, ("HALLEX"), I-1-3-25(C)(4)(a), contain the Agency's interpretation of the statutes at issue as establishing redeterminations as distinct proceedings from reopenings, *see* S.S.R. 16-1p, 2016 WL 1029284, at *1 n.1 (West Mar. 14, 2016) ("[f]raud and similar fault redeterminations under sections 205(u) and 1631(e)(7) of the Act are distinct from reopenings as described in 20 C.F.R. [§§] 404.987-404.996"), and prohibiting challenges to the OIG fraud findings in redeterminations, *see* S.S.R. 16-1p(D)(3), 2016 WL 1029284, at *5 ("An individual may appeal our finding of fraud or similar fault. However, we will not administratively review information provided by SSA's [OIG] under section 1129(l) of the Act regarding its reason to believe that fraud was involved in the individual's application for benefits"); HALLEX I-1-3-25(C)(4)(a) ("Under sections 205(u) and 1631(e)(7) of the Act, adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral of information or a referral based on information obtained during a criminal or other law enforcement investigation.").

As stated above, Rule 59(e) motions may not be used to raise arguments which could have been raised prior to entry of the court's judgment. *See Pac. Ins. Co.*, 148 F.3d at 403. Taylor, in his original claims, raised other arguments that the Commissioner's actions had violated the APA, but he did not raise this argument. He has offered no explanation as to why this argument could not have been raised

with the court earlier, and I am not persuaded that the Memoranda posed any significant change in the existing law. Also, a court may deny a Rule 59(e) motion, if reopening the case to allow an amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). Based on the above, I am not persuaded that the Memoranda prohibit the Commissioner from relying on Social Security Rulings and the HALLEX. Therefore, I will deny Taylor's Motion on this ground.

I also will deny the Motion insofar as it is based on the argument that the defendant Berryhill violated the Federal Vacancies Reform Act by continuing to serve as Acting Commissioner. On March 6, 2018, the Government Accountability Office, ("GAO"), stated that, as of November 17, 2017, Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official, and "[t]herefore … Berryhill was not authorized to continue serving using the title of Acting Commissioner…." https://www.gao.gov/products/D18772#mt=e-report, B-329853, Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner, Social Security Administration, Mar. 6, 2018, at 2. Taylor's Complaint in this case was properly filed in November 2016 against Carolyn W. Colvin, the Acting Commissioner at that time. Colvin also served as Acting Commissioner when Taylor's redetermination decisions were made. *See* https://www.ssa.gov/history/colvin.html (last visited August 14, 2019). Berryhill was properly substituted as the defendant in the case when she became Acting Commissioner on January 21, 2017, pursuant to Federal Rules of Civil Procedure Rule 25(d). *See* https://www.ssa.gov/history/commissioners.html (last visited August 14, 2019). According to the GAO, and Taylor concedes, Berryhill properly held the position of Acting Commissioner until November 16, 2017. Thus, Berryhill was properly serving as Acting Commissioner when the SSA's motion and arguments on the merits of Taylor's claims were filed with this court on June

19, 2017. According to Rule 25(d), even if Berryhill had no statutory authority to continue to act as Acting Commissioner after November 17, 2017, "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." FED. R. CIV. P. 25(d). Furthermore, pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3346(a)(2), it appears that Berryhill began properly serving again as Acting Commissioner on April 17, 2018, when the President nominated Andrew Saul to be the next Commissioner of Social Security, and continued properly to serve until Saul became Commissioner on June 17, 2019.

Taylor also argues that his Motion should be granted to allow him to file an amended complaint to attack the constitutional authority of the SSA's decisionmakers on his redetermination. In particular, Taylor wishes to add a claim that the ALJs who decided his claim on redetermination were appointed in violation of the Appointments Clause of the U.S. Constitution. On June 21, 2018, the Supreme Court, in *Lucia v. SEC*, 138 S.Ct. 2044, 2053-55 (2018), held that the ALJs who presided over the SEC's enforcement proceedings were "Officers of the United States" within the meaning of the Appointments Clause of the Constitution. The Court also held that, as "Officers of the United States," the SEC's ALJs were not properly appointed. *See Lucia*, 138 S.Ct. at 2055. The Court further held that the "'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Lucia*, 138 S.Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 183, 188 (1995)). The Court stated that such a remedy was appropriate in Lucia's case because he had made a "'timely challenge to the constitutional validity of the appointment of an officer who adjudicate[d] his case.'" *Lucia*, 138 S.Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83.) In particular, the Court noted that Lucia contested the validity of the ALJ's appointment before both the SEC and the Court of Appeals. *See Lucia*, 138

S.Ct. at 2055.

Here, the Commissioner does not contest that the *Lucia* ruling applies equally to the ALJs who hear and decide SSA claims for benefits. Nor does the Commissioner contest that the ALJ who decided Taylor's case on redetermination was not, then, properly appointed under the Appointments Clause. Instead, the Commissioner argues that, because Taylor did not challenge the validity of the ALJ appointment earlier, he has forfeited this claim. Taylor concedes that his Appointments Clause argument was not raised at the ALJ or Appeals Council level. In fact, he admits that this argument was not raised in this court until he filed the pending Motion, almost a month after judgment had been entered.

In the wake of the *Lucia* ruling, numerous district courts have considered Appointments Clause challenges to the validity of SSA decisions denying claims for benefits. While I have not reviewed each of these decisions, I have reviewed many of them. Most of these decisions have found that an Appointments Clause challenge to the validity of an SSA decision is forfeited or waived by the claimant if not raised before the ALJ who heard the case. *See, e.g., Muhammad v. Berryhill*, 381 F. Supp. 3d 462 (E.D. Pa. 2019); *Fortin v. Comm'r of Soc. Sec.,* 372 F. Supp. 3d 558, 562-68 (E.D. Mich. 2019*); Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341 (S.D. N.Y. 2019); *Sprouse v. Berryhill,* 363 F. Supp. 3d 543 (D. N.J. 2019); *Delores A. v. Berryhill*, 2019 WL 1330314 (C.D. Cal. Mar. 25, 2019); *Diane S. P. v. Berryhill*, 2019 WL 1879256 (E.D. Va. Mar. 21, 2019); *Shipman v. Berryhill*, 2019 WL 281313 (W.D. N.C. Jan. 22, 2019); *Iwan v. Comm'r of Soc. Sec.*, 2018 WL 4295202 (N.D. Iowa Sept. 10, 2018); *Abbington v. Berryhill*, 2018 WL 6571208 (S.D. Ala. Dec. 13, 2018); *Nickum v. Berryhill*, 2018 WL 6436091 (D. Kan. Dec. 7, 2018). A few have ruled to the contrary. *See Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019); *Bradshaw v. Berryhill*, 2019 WL 1510953 (E.D.

N.C. Mar. 26, 2019); *Probst v. Berryhill*, 2019 WL 1749135 (E.D. N.C. Mar. 22, 2019). Several of these cases contain little, if any, analysis of the issue; some even dispense with the issue in a footnote. Of those cases that do contain an analysis of the issue, there is no particular ruling that stands as singularly persuasive. Nonetheless, after considering the collective reasoning of these courts, I am persuaded to hold that a claimant who did not properly raise this issue when his claim was before the ALJ has waived or forfeited any Appointments Clause challenge to the SSA's decision.

Again, my reasoning for this ruling is not groundbreaking in light of earlier similar district court decisions, but it does vary in some respect. The Social Security regulations require an ALJ to identify to a claimant the issues to be decided in a case prior to hearing. *See* 20 C.F.R. § 404.938(b)(1) (2018). Furthermore, the Social Security regulations require a claimant to file written objections to the ALJ's list of issues to be decided prior to the claimant's hearing. *See* 20 C.F.R. § 404.939 (2018). The Social Security regulations do not, however, require a claimant to raise a specific issue on appeal of an ALJ's decision to the Appeals Council to preserve that issue for appeal to the district court, and the Supreme Court has refused to impose judicially created issue exhaustion. *See Sims v. Apfel,* 530 U.S. 103, 109-12 (2000). The Court in *Sims*, nonetheless, explicitly noted, "Whether a claimant must exhaust issues before the ALJ is not before us." 530 U.S. at 107. Furthermore, the Court has held that 42 U.S.C. § 405(g) contains a nonwaivable, nonexcusable requirement that a claimant present a claim to the SSA before raising it in a district court. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000) (citing *Heckler v. Ringer*, 466 U.S. 602, 622 (1984); *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 763-64 (1975)).

As stated above, the Court in *Lucia* held that a new hearing before a properly appointed official was required only because Lucia had made a timely Appointments Clause challenge to the ALJ who had heard his case. *See* 138 S.Ct. at 2055. Likewise, in *Ryder,* the Court allowed an Appointments Clause challenge to the composition of the Coast Guard Court of Military Review only because the petitioner raised his challenge when he was before the court. *See* 515 U.S. 177, 182-83; *but see Freytag v. C.I.R.,* 501 U.S. 868, 878-79 (1991) (Supreme Court held that Appointments Clause challenge to appointment of a Tax Court special trial judge, which was not raised in courts below, was "one of those rare cases" in which it should exercise discretion to hear the issue). In *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952), the Court held that parties who waited until they were in court to raise a statutory defect in the appointment of the official who issued an agency's decision had, in effect, waived the issue.

Based on the above, I am persuaded that Taylor was required to raise his Appointments Clause challenge when his claim was before the SSA on redetermination. His failure to do so has resulted in that claim being forfeited on appeal. Therefore, I will enter an Order denying the Motion.

**ENTERED**: August 15, 2019.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE